FOX v. GROESBECK, Treasurer, et al.

No. 4097.   Decided May 7, 1924.   (226 Utah 183.)

TAXATION—ASSESSMENT AND TAX, BASED ON ARBITRARY VALUATION OF PROPERTY NOT SHOWN TO EXIST, HELD VOID AND NOT SUSTAINABLE AS PENALTY FOR FAILURE TO FILE RETURN.   A personal property

assessment and tax against plaintiff, based on an arbitrary valuation of $100,000 purporting to be made pursuant to Comp. Laws 1917, § 5882, on plaintiff's failure to make verified return required by section 5877 on form provided by section 5879, such assessment being based not on any known or existing property in county within section 5876, but on plaintiff's habits of living and external appearances, *held* void and not sustainable as a penalty for failure to file verified return in view of section 5881.

Appeal from District Court, Third District, Salt Lake County; *Wm. M. McCrea,* Judge.

Action by Moylan C. Fox against E. J. Groesbeck, as Treasurer, and another. Judgment for plaintiff, and defendants appeal.

AFFIRMED.

*A. E. Moreton,* Co. Atty., and *G. G. Armstrong,* Asst. Co. Atty., both of Salt Lake City, for appellants.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for respondent.

CHERRY, J.

This action is to recover $1,910.40, the amount of a tax paid under protest by plaintiff to defendants. The complaint alleges, in substance, that in the month of June, 1918, the plaintiff received a purported notice that a tax of $1,980 had been levied and assessed against him upon personal property alleged to be owned by him of the value of $100,000; that the valuation of the property and the levy and assessment of the tax were made without the knowledge of plaintiff, and without affording him any opportunity to be heard or to contest the same before the board of equalization; that the purported assessment and valuation of the alleged personal property was a mere guess, and arbitrary designation of the county assessor, and made without any knowledge whatso-

ever of the identity and value of the personal property owned by plaintiff; that no estimate was made of its value, and that the purported assessment and valuation constituted a fraud upon the plaintiff; that the purported entry of assessment against plaintiff was made on the assessment rolls of Salt Lake county by entering $100,000 in the column headed and entitled ''Value of Other Taxable Property''; that such entry does not, and did not, show the number, kind, amount, or quality of the property assessed; that it cannot be determined therefrom what property was meant or intended; that plaintiff has had no notice or information, and has no knowledge or information of the property meant or intended to be so described or assessed, and that the assessment was void for uncertainty; that the only personal property owned by plaintiff during said year, or subject to taxation, was of a value not exceeding $3,415.68, and the lawful tax thereon amounted to $69.60, and that $1,910.40 of the total tax of $1,980, attempted to be levied against the plaintiff, was unlawful; that on November 30, 1918, the plaintiff paid the said sum of 1,910.40 under protest, etc.

A demurrer to the complaint was overruled, and the defendants filed an answer containing certain admissions and denials, and alleging that prior to the month of June, 1918, the county assessor of Salt Lake county required from plaintiff a statement under oath setting forth all the real and personal property owned by him or in his possession or under his control at 12 o'clock m. on the 1st day of January, 1918; that plaintiff refused and neglected to make and return such statement, whereupon such refusal was duly noted on the assessment book, and the assessor thereupon made an estimate of the value of plaintiff's property and placed the value thereof at $100,000; that by law the county commissioners were prohibited from reducing said assessment; that the plaintiff's lack of opportunity to contest or protest said assessment was due to his own refusal to comply with the demand of the assessor; and that he is estopped thereby from now making objection to the same.

The plaintiff filed a reply setting forth in substance that if any blank form of statement, or notice, or requirement for

the return of a sworn statement, was made upon him, it was mislaid or misplaced or miscarried, without fault on his part, and that any neglect or failure on his part to return a sworn statement was not willful or intentional or of such nature as to work an estoppel against him, but was excusable; that as soon as he learned that a verified statement was required from him, and as soon as he learned of said pretended assessment of personal property against him, he immediately made a full and complete return to the county assessor of all property by him owned and in strict conformity with law, but he was informed by the said assessor that such action on his part was too late, and that no change in the assessment could or would be made.

The action was tried by the court without a jury, at the conclusion of which the court made findings of fact, in substance, that on March 20, 1918, the county assessor delivered to plaintiff a written requirement to furnish within 20 days a verified statement of the taxable property owned by him; that on account of inadvertence and oversight the plaintiff failed to return the statement; that between May 10 and 20, 1918, the county assessor made an entry on the original assessment book against and opposite the name of the plaintiff as follows: "Value of other taxable property, $100,000"; that thereafter there was made an entry on the assessment roll for the year 1918 under the heading "Personal Property not Otherwise Enumerated" the figures "$100,000"; that said entries were uncertain; that it could not be determined therefrom, and plaintiff had no notice or never has had any knowledge of what property was intended or meant to be described by the said entries; that the said entries were made by the assessor without any knowledge of the identity of any property owned or possessed by the plaintiff, and as a mere guess and arbitrary designation, and that no estimate of the value of any known property was ever made; that the only property owned or possessed by plaintiff during the year 1918 subject to taxation or not otherwise assessed and taxed was $3,464.68 in money and a watch of the value of $50; that the plaintiff had no knowledge of the purported assessment of $100,000 until he learned of it by in-

direct and unofficial means on May 24, 1918; that on June 1, 1918, he made a sworn statement of his taxable property to the assessor; that the first notice of the said pretended assessment and tax complained of was received by plaintiff in August or September, 1918, when it was too late to be heard by the board of equalization.

The conclusions of law were to the effect that the assessment was void for uncertainty of description; that no estimate of value was made as required by law; that the acts of the assessor in making the purported assessment were unlawful, malicious, capricious, and fraudulent; that they constituted a mere arbitrary guess and designation and not a valid assessment, and the assessment was so grossly excessive as to constitute constructive fraud; that plaintiff is not estopped to contest the assessment and tax, and that the assessment and tax were illegal and void, and the plaintiff was entitled to recover the same from the defendants.

The assignments of error, while numerous, may be condensed into the general claim that the facts alleged and proved and found by the court are not sufficient to show that the assessment and tax in controversy were illegal and void.

The assessment is attempted to be justified upon the broad proposition that when the plaintiff failed to return a verified statement of his taxable property he then became subject to any assessment that might be made against him.

The circumstances of this case are unusual and extraordinary. It was not claimed that when the assessment was made the assessor had any knowledge or information of any property whatever owned or possessed by the plaintiff to which the assessment referred. The assessor testified that he took into consideration the habits of living and the external appearances of the plaintiff, and, after consulting with other observers, decided that he was in the "$100,000 class," and assessed him accordingly. It was not claimed, even at the trial, that the assessment was intended to be on any known or existing property. The evidence showed, and the court found in effect, that there was no property upon which the assessment was made or to which it related.

Comp. Laws Utah 1917, § 5876, provides that the assessor

must ascertain the names of all taxable inhabitants and all property in the county subject to taxation. By section 5877 the assessor may require from any person a statement under oath setting forth specifically all the real and personal property owned by such person or in his possession. Section 5879 requires the state board of equalization to furnish the assessor of each county with blank forms of statements as provided in section 5877, affixing thereto an affidavit. Section 5881 gives the assessor power to require any person found within such assessor's county to take and subscribe an affidavit respecting his property, and to subpœna and examine him in relation to any statement furnished, and provides that every person who willfully refuses to furnish the statement hereinbefore required or to make and subscribe such affidavit, or to appear and testify when required, for each and every refusal shall forfeit to the county the sum of $100, to be recovered by action brought in the name of the assessor. Section 5882 provides that—

"If any person, after demand made by the assessor, neglects or refuses to give, under oath, the statement herein provided for, or to comply with the other requirements of this title, the assessor must note the refusal on the assessment book opposite his name, and must make an estimate of the value of the property of such person, and the value so fixed by the assessor shall not be reduced by the board of county commissioners."

It is contended that the authority for the assessment in question is contained in section 5882; that the neglect and refusal of the plaintiff to give a sworn statement of his property empowered the assessor to make an estimate of the value of his property, which would constitute a legal assessment.

An assessment made in good faith, under these circumstances, upon existing property, would be readily upheld against attacks for defective description, overestimation in quantity, or overvaluation, or mere mistake in judgment. But the instant case presents no such questions. We are not dealing with description, quantity, or value. Here there is an absence of the subject-matter to which description, quantity, or value may be applied. The fundamental basis for general taxation is the ownership or possession of property. And this necessarily involves the existence of property, with-

out which there can be no ownership or possession. An assessment must be upon something, or it is no assessment. It is not a question of sufficiency of description, because there can be no description when there is nothing to describe. When this assessment was made the assessor had seen nothing, had learned of nothing, and had nothing definite in his mind to assess, hence he could not describe it. It was not claimed at the trial that the assessment ever had reference to anything capable of description. Neither can there be any estimate of the value of property which is not in being.

The assessment cannot be supported upon any rational theory unless it is sustained as a penalty for wrongful refusal to return a statement, and manifestly it cannot be sustained on that ground. Such arbitrary and unlimited power cannot be presumed to have been intended by the Legislature, and its intention to confer any such unbounded authority is disputed by the express provisions of section 5881 which define and limit the penalties which may be imposed, and prescribe the manner of their enforcement and collection.

We think the assessment and tax are not authorized by the statute quoted, or at all. It is invalid and illegal because it lacks the foundation upon which a property tax must rest. This conclusion makes it unnecessary to consider whether on other grounds the assessment was arbitrary, capricious, or fraudulent, which subjects have been ably discussed in the briefs.

Appellants' counsel have strongly urged upon us in support of the tax the decision of this court in *Nutter* v. *Carbon County,* 58 Utah, 1, 196 Pac. 1009. There is no analogy between that case and the one under consideration. In the *Nutter Case* the assessment was upon a large number of cattle on the range, the precise number of which no person knew. Their existence and ownership were admitted. The owner having refused to return a sworn statement, the assessor estimated the number of cattle at 1,500 head and assessed them accordingly. The assessment being challenged on the ground that the estimate was excessive, this court held that a judicial inquiry in such case was limited to whether the assessor had

acted unlawfully, maliciously, or fraudulently in making the assessment and found the evidence insufficient to support findings that he had so acted. There was present in the *Nutter Case* a basis for the assessment, the lack of which in the instant case renders the assessment and tax illegal and void.

Judgment affirmed.

GIDEON, THURMAN, and FRICK, JJ,, and WOOLLEY, District Judge, concur.

WEBER, C. J., did not participate.